403 So.2d 827 (1981)
Ray BAMBURG, Plaintiff-Appellant,
v.
Delores G. LAVIGNE, Defendant-Appellee.
No. 14609.
Court of Appeal of Louisiana, Second Circuit.
August 25, 1981.
*828 James E. Franklin, Jr., Shreveport, for plaintiff-appellant.
Wiener, Weiss, Madison & Howell by John M. Madison, Jr., Shreveport, for defendant-appellee.
Before PRICE, HALL, MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
Plaintiff appeals a judgment[1] rejecting in part his demands under the usury law, LRS 9:3501,[2] to recover all interest paid defendant under a 1977 credit deed of an immovable. The deed and note provided for a rate of interest payable annually,
"... equal to the prime rate of [a New York bank] ..., plus one-half ... of one... percent on each principal payment date ..."
The annual interest that was paid and accepted in 1978 did not exceed the maximum conventional interest rate. LRS 9:3503. The annual interest that was paid and accepted in 1979 and in 1980, when the note was paid in full, exceeded the maximum conventional interest rate and was usurious.
The trial court found that neither party intended the rate to become usurious, that forfeiture of the entire interest would not be declared, and that defendant should return to plaintiff the amount of interest paid above the maximum rate in 1979 and in 1980 ($2,418). Plaintiff contends that all *829 interest paid in 1978, 1979, and 1980 ($24,093), should be forfeited and returned to him.[3] In answer to the appeal, defendant contends that plaintiff's demands should be totally rejected because the contract is not usurious on its face. The litigants differ as to the effect of Paulat v. Pirello, 353 So.2d 1307 (La.1977). We amend to allow recovery of all interest paid in 1979-80.
Plaintiff is not seeking to avoid the contract and defendant is not seeking to enforce. The issue is the applicability of the forfeiture of § 3501 to this contract, not per se usurious on its face in 1977, but which, when applied in 1979 and 1980, became usurious and interest above the maximum allowable was paid and accepted under this contract.
In Paulat, the holder of the note argued, as the defendant-former holder argues here, that the note was not usurious on its face and that payments of usurious interest made and accepted after the execution of the note, without the advice of counsel or intent to violate the law, should not be deemed a contract subject to the § 3501 forfeiture. The Paulat holder relied on Grunewald v. Bartholomew, 269 So.2d 274 (La.App. 4th Cir. 1972), in which the appellate court reiterated the principle that "usury is determinable from the face of the instrument." The Supreme Court answered:

"Grunewald under its facts is a correct statement of principle. It does not, however, purport to legitimize, as non-usurious, payments exacted after execution of a note not usurious on its face, when such payments in fact and by agreement of the parties constitute usurious interest. And that is the issue before us in this litigation." 353 So.2d at p. 1310 Emphasis supplied.
In Paulat and in Grunewald, interest exceeding the allowable rate had been legitimately capitalized in the note which was discounted. The note in each instance provided for interest at the then allowable rate of eight percent from maturity. Because the Grunewald note was payable on demand, the court held that the note was mature the date it was written and the interest charged (the 8% from date with the capitalized interest) was effective the date the note was written and was usurious without a time interval between the date of the note and the maturity of the note. Grunewald said:
"As maturity in a demand note is the date of the instrument, there is no interval of time between date and maturity; they occur at the same time. Nor can the holder of the note in suit unilaterally change the annual interest provision from the date of the note to one year or more from date and thus cure the usurious nature of the instrument. Usury is determinable from the face of the instrument, from the time that interest is due on its face and not from the time when payment of interest may be demanded. The holder can no more change the usurious nature of this instrument than can the holder of a note calling for 25% annual interest change such a note from usurious to legal by offering to accept the legal rate of interest. Accordingly, we hold the note in suit is usurious, the penalty for which is forfeiture of the entire interest contracted, here the forfeiture of both capitalized and annual interest." 269 So.2d at p. 277 Footnote omitted.
The Paulat note included 18% capitalized interest and was payable six months after date. Between 1964 and 1968 the borrower paid the 18% capitalized interest and executed a new note, also bearing the 18% *830 capitalized interest, at six months intervals. From 1969 to 1972, the borrower simply paid the 18% capitalized interest every six months without executing a new note as he had in the past. When the borrower refused to execute a new note in 1973, the lender sued on the 1969 note(s). The court observed:
"Succinctly, by so doing, the borrower paid and the lender accepted interest at the usurious rate of 18% annually on each of the notes, even though the notes were stated to bear interest only at the allowable rate of 8% annually from maturity.

"These payments were apparently made and received without the benefit of advice from a lawyer. The issue of their usuriousness arose in 1973, when the borrower retained counsel in connection with the lender's demand that he re-execute notes on these two loans in order to secure extensions of them. These notes were to include capitalized interest at the rate of 18% for post-1973 periods during which the borrower was delinquent in his (18%) interest payments.
"Upon the borrower's refusal to execute these new notes, the lender brought suit on the two 1969 notes. However, in his suit the lender credited each $900 payment partly to interest at the maximum 8% conventional rate allowable, and the remainder to principal." 353 So.2d at p. 1309 Emphasis supplied.
Defendant's argument that the formula by which the annual interest is to be computed should be reformed to make it subject to the ceiling imposed by Louisiana law, appears to have considerable equitable appeal. In effect, this argument was adopted by the trial court as the rationale for ordering the return of only the usurious interest. Additionally, the defendant argues that the note here was not matured or past due on its face as was the Paulat note and that because of this distinction, the Paulat rationale should not apply to compel § 3501 forfeiture of the entire interest. Notwithstanding the Supreme Court's repeated use of the term after maturity in Paulat, we do not perceive the distinction as requiring a different result in the instant circumstances.
In Paulat, the rate which became usurious derived from the 18% discount of the note that was legitimately capitalized initially into the note. 353 So.2d at p. 1309. Here, the rate derived from the application of the written formula which became usurious in 1979. In both instances, and as the Supreme Court observed in Paulat, the interest later paid and accepted and which became usurious,
"... [was] thus made ... by virtue of the contract or agreement ... that interest would be paid in that manner and at that rate.
"Since the interest payments so made by virtue of the agreement(s) are usurious, the `entire interest so contracted' ... is forfeited ..." 353 So.2d at p 1310.
Here, as in Paulat, the agreement between, and as consummated by, the parties shows that the usurious interest was not erroneously or mistakenly computed, paid, and accepted, but was computed, paid, and accepted in purposeful following of the agreement, admittedly in ignorance of the law. The agreement(s) in Paulat were written as well as verbal and the verbal agreement to pay the 18% interest derived from the written agreement. Here, we do not have the problem of a discounted note and of the date of maturity as was posed in Grunewald and in Paulat.
Here, we have one written contract which has been fully carried out and completed and under which usurious interest was computed, paid, and accepted. The statute clearly expresses that any contract for the payment of [usurious] interest shall result in the forfeiture of the entire interest contracted (§ 3501), and not simply the usurious interest (Karmgard v. Southland Mtg. & Title Co., 341 So.2d 1109 (La.1977), Paulat, supra, at p. 1311). After execution of a note or contract, not per se usurious on its face, usurious interest purposefully paid and accepted by virtue of the agreement or contract of the parties, will result in the *831 forfeiture of the entire interest. See Paulat, Karmgard, and Grunewald, cited supra. We are obliged to follow these policy dictates of the legislature as interpreted and applied by our highest court. The fact that the contract was not initially usurious is not a defense to the application of § 3501 where it is shown that the interest paid and accepted under that contract as implemented and consummated by the parties became usurious. Paulat, supra. Parol evidence may be admitted to show that usurious interest was paid and accepted. Karmgard, supra.
The argument that usury is determinable solely from the face of the contract, made in Grunewald, in Paulat, and made here, was squarely rejected by the Supreme Court in Paulat, when the court said that the argument was correct in principle, but that
"[it] does not ... legitimize, as non-usurious, payments exacted after execution of a note not usurious on its face, when such payments in fact and by agreement of the parties constitute usurious interest." 353 So.2d at p. 1310.
We follow the Paulat declaration, fully realizing that the parties were in ignorance of the legal effect of their agreement to pay and receive interest according to a formula based on the prime rate. Paulat allowed recovery of the entire interest paid after the note, not usurious on its face, became usurious after execution. Also see Kin-Ark Corp. v. Boyles, 593 F.2d 361 (10 C.A., 1979) reaching the same result under Texas law. Under the authority of Paulat, we pronounce the same result to order forfeiture of the entire interest paid after the interest became usurious.
The judgment is amended to increase the amount awarded plaintiff to $17,818.75, with legal interest on $8,268.75 from February 4, 1979, and on $9,450 from February 4, 1980, at defendant's cost.
As amended, the judgment is AFFIRMED.
FRED W. JONES, Jr., Judge, dissenting.
The Louisiana Usury Law (La.R.S. 9:3501) penalizes the party who receives interest under a usurious contract by providing for the forfeiture of the "entire interest so contracted."
Contracting for the payment of interest in excess of the legal maximum is considered so opprobrious, because of the statutorily expressed state public policy, that all interest owed under the contract, including capitalized interest incorporated in the face amount of the note, is forfeited. Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150 (La.1973).
As pointed out in Tarver v. Winn, 18 La.Ann. 557 (1866), "the agreement to pay greater interest than that allowed by law to be contracted for, makes that part of the contract null and void, and produces no legal effect between the parties contracting, and is the same as if no agreement had been entered into relative to interest."
Since this interest forfeiture provision is penal in nature, it has been strictly construed. For example, the court in Unity Plan Finance Co. v. Green, 179 La. 1070, 155 So. 900 (1934) cited with approval the following statement found in a California case:
"It is also elementary that the contract must in its inception require a payment of usury or it will not be held a violation of the statute and it may not be judged after some default of the borrower, which default alone authorizes penalties or forfeiture which, if exacted in the beginning, would have been a violation of the statute."
It is significant that even in Paulat, upon which the majority places such heavy reliance, the court found a usurious contract. It was conceded that the notes sued upon were not contracts for the payment of usurious interest, since the excessive interest was capitalized. However, the court then proceeded to hold:
"By mutual agreement of the two parties following maturity of the notes, payments of interest were made and received at the rate of 18% per annum.
*832 These payments were thus made and received by virtue of the contract or agreement, express or implied, entered into by the parties after maturity of the notes that interest would be paid in that manner and at that rate." (Emphasis added)
In the case at bar, unlike Paulat, the 1979 and 1980 usurious interest payments were not made pursuant to some agreement entered into subsequent to the execution of the original note in 1977. Consequently, the central issue in our case is whether the 1977 contract, with the interest rate indexed to the prime rate of a New York bank, was a contract for the payment of usurious interest.
The following pertinent summary of factors to consider in determining whether a contract is usurious is found in 45 Am. Jur.2d, Interest and Usury, § 111, pp. 97, 98:
"Usury ... imports the existence of several essential elements ... generally enumerated as (1) a loan or forbearance, either express or implied, of money, or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. (Emphasis added) The presence of these elements infallibly indicates usury irrespective of the form in which the parties put the transaction, but the absence of any one of them conclusively refutes a claim of usury. These elements must exist at the inception of the contract, since a contract which in its inception is unaffected by usury cannot be invalidated by a subsequent usurious transaction, nor, as a general rule, may a transaction that is usurious in its inception be subsequently cured. It is the agreement to exact and pay usurious interest, and not the performance of the agreement, which renders it usurious. The test to be applied in any given case is whether the contract, if performed according to its terms, will result in producing to the lender a rate of interest greater than is allowed by law, and whether such result is intended."
At the time the contract in question was executed in 1977, the prime interest rate to which the interest clause was indexed was 6.25%. The maximum legal rate was then 10%. However, because of the congruence of economic tides over which the parties had no control nor reason to anticipate when they contracted, the prime interest rate escalated in 1979 and 1980 to heights above the Louisiana legal maximum.
Was the 1977 contract usurious simply because of the possibility that the index prime interest rate would rise above the legal maximum? Obviously not, and the majority does not so hold. On the other hand, it does find that the contract in question was usurious because "we have one written contract which has been fully carried out and completed and under which usurious interest was computed, paid, and accepted." To carry this reasoning to its logical conclusion, if the prime interest rate had fallen after 1979 and only that interest payment was usurious, the original 1977 contract would still be considered as usurious by the majority. Consequently, under the rationale of Thrift Funds of Baton Rouge, Inc. v. Jones, supra, all interest paid under this contract, whether in excess of the legal maximum or not, would have to be forfeited. I do not believe that this result was ever envisioned by the enactors of our usury statute.
In summary, the majority seems to hold that, although not usurious on its face, the 1977 contract became usurious when interest payments made thereunder proved to be usurious.[1] If this is correct, as previously pointed out, all interest paid under the 1977 contract should have been forfeited since *833 the contract itself was usurious. However, I cannot agree that the 1977 contract was usurious under the required strict construction of our usury statute.
Usury laws in general were designed to protect needy borrowers from unscrupulous moneylenders, since it was recognized that in the power of the lender to relieve the wants of the borrower lay the germ of oppression. Because of his inferior economic position, the borrower frequently was powerless to resist the oppressive exaction of interest. 45 Am.Jur.2d, § 4, p. 18.
Since the object of usury legislation is to protect borrowers from unconscionable demands of lenders, that view of the law should be adopted which will accomplish this purpose. The statutes should not be converted from "shields of protection into swords of offense." 45 Am.Jur.2d, § 8, p. 22.
Our usury law restricts its harsh forfeiture sanctions to a contract for the payment of excessive interest. This contemplates proof by a preponderance of the evidence that at the time of execution of the contract the lender intended to charge usurious interest. Such evidence is totally lacking in this case. Neither party had reason to anticipate the forthcoming skyrocketing prime interest rates. However, under the majority's reasoning, at the time that the indexed prime rate (plus ½%) exceeded the legal maximum, the 1977 contract was retroactively tainted with usuriousness.
It does not seem to me that the Louisiana usury law was intended to impose its harsh penalty upon a hapless lender in these fortuitous circumstances. Viewed in the historical context of usury laws in general, it is obvious that the statute in question had as its restricted goal the penalizing of lenders who deliberately and intentionally charged borrowers interest rates in excess of the legal maximum. That did not occur here.
However, even though I would not find the interest clause of the 1977 contract to be usurious, it is obvious that interest payments made by plaintiff in 1979 and 1980 were actually in excess of the legal maximum. Rather than reforming the original contract, as did the trial judge, I would permit recovery by plaintiff of the excess payments by characterizing his action as one in quasi-contract under La.C.C.Art. 2294[2]for the return of money paid which was not legally due. It is upon this basis that I agree with the judgment of the trial court.
For these reasons I respectfully dissent.
NOTES
[1] This case was reargued before a five-judge panel after one judge on original hearing dissented from the modification of the judgment appealed. La.Const., Art. 5, § 8(B).
[2] "Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted."
[3] This note was fully paid on February 4, 1980. These interest payments (with principal) were made on the dates shown:

Date Rate plus ½% Int. paid
2/4/78 8½% $6,375.00
2/4/79 12¼% 8,368.75
2/4/80 15¾% 9,450.75

The maximum conventional interest rate applicable to this transaction was raised from 10 percent to 12 percent by Act 205 of 1979, amending § 3503, effective September 7, 1979. The interest paid and received in 1979 and 1980 exceeded the maximum allowable rate of interest respectively then in effect. The 1978 payment was below the maximum allowable rate.
[1] The majority refers to Kin-Ark Corp. v. Boyles, 593 F.2d 361, as "reaching the same result under Texas law." The penalty provision of the Texas statute covers "any person who contracts for, charges or receives interest which is greater than the amount authorized...." (emphasis added) See Art. 5069-1.06(1), Vernon's Tex.Rev.Civ.Stat.Ann. Our Louisiana usury law is not that broad.
[2] "All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi-contracts. But there are two principal kinds which give rise to them, to-wit: The transaction of another's business, and the payment of a thing not due."