408 So.2d 1153 (1981)
James A. COFFEY, et ux, Plaintiffs-Appellees,
v.
PEOPLES MORTGAGE & LOAN OF SHREVEPORT, INC., Defendant-Appellant,
Pioneer Bank & Trust, Third Party Defendant-Appellee.
No. 14718.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*1154 Touchstone & Wilson, Ltd. by David M. Touchstone, Shreveport, for defendant-appellant.
Booth, Lockard, Politz & LeSage by John R. D'Anna, Shreveport, for plaintiffs-appellees.
Bodenheimer, Jones, Klotz & Simmons by J. W. Jones, Shreveport, for third party defendant-appellee, Pioneer Bank & Trust.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
Defendant appeals a summary judgment applying LRS 9:3501 and ordering a forfeiture of $20,317 in interest paid by plaintiffs under the terms of a $121,491 secured note and mortgage executed by plaintiffs in connection with their purchase of a residence in December 1978.[1] We affirm. Bamburg v. Lavigne, 403 So.2d 827 (La.App.2d Cir. 1981).
This note, similar to the Bamburg note, provided for interest at three percent above the prime interest rate charged by a New York bank on the date of any payment on the note. This note, payable in 12 monthly installments, was paid in full in this manner:

Payment Amount Interest Credited to Credited to
Number Paid Rate Chgd. Interest Principal
 1 $2,389.44 14.75% $2,389.44 - - -
 2 1,800.00 14.75% 1,742.30 $ 57.70
 3 1,800.00 14.50% 1,320.57 479.43
 4 1,800.00 14.50% 1,559.04 240.96
 5 1,800.00 14.75% 1,384.88 415.12
 6 1,800.00 14.50% 1,501.95 298.05
 7 1,800.00 14.75% 1,573.44 226.56
 8 1,800.00 15.25% 1,725.16 74.84
 9 1,800.00 16.25% 1,560.44 239.56
 10 1,800.00 17.50% 1,509.82 290.18
 11 2,114.35 18.00% 2,025.88 88.47
 12 121,105.10 18.00% 2,024.37 119,080.73
 __________
 Total Interest Paid: $20,317.29

In Bamburg, the note that was given in partial consideration for the credit sale of an immovable was found to be a contract subject to the limitation of LRS 9:3503 and to the forfeiture of LRS 9:3501.[2]
Because defendant is a finance company, a licensed lender under the Louisiana Consumer Credit Law (LRS 9:3510 et seq.), defendant contends that the transaction should be governed by that law which allows a higher rate of interest than does LRS 9:3503.[3]
*1155 During the term of this note, and before amendments were enacted in 1980, the Consumer Credit Law defined consumer loan as being a loan not exceeding $25,000 in principal and not a loan on immovable property if the loan finance charge did not exceed 10 percent simple interest per annum. LRS 9:3516(13). Subsection (10) defined consumer credit sale as being a sale of a thing, other than immovable property, for a deferred price not exceeding $25,000. Whether we construe this transaction as a loan on an immovable, as it appears on its face, or as a credit sale of an immovable, as defendant contends we should, the transaction is not per se a consumer credit transaction by the express exclusionary definitions of that law and is a contract subject to LRS 9:3501, 3503.
Notwithstanding the express exclusions of that law, LRS 9:3514 allows the parties to any excluded transaction to contract with one another that the transaction shall be governed by the Consumer Credit Law. On this premise, defendant argues that because plaintiffs knew they were borrowing from a finance company governed by the Consumer Credit Law, plaintiffs should have had every expectation that they would be charged finance company rates permitted by that law. Defendant urges that equity of CC Arts. 1964-1965 should apply the higher rate of interest allowed by the Consumer Credit Law and that this transaction should be upheld as non-usurious.[4] We do not agree and we decline counsel's invitation to speculate about the public's understanding of "finance-company rates". Other laws, attempting to balance the interests of the debtor and creditor, foreshadowed the Louisiana Consumer Credit Law.
"Perhaps recognizing the difference in risks, administrative costs, and security between productive and consumptive loans, and intending to make money available to necessitous borrowers from regulated lenders, Louisiana lawmakers, in 1942, first exempted small consumptive loans from control under the usury laws by enacting the Small Loan Law. The law permitted interest rates up to 42% on loans under $300. Legislation in 1968 established special interest rates for revolving loan plans. In 1970, usury exemptions for consumer sales were added that allowed issuers of credit cards to charge 1½% per month on revolving accounts. All of these provisions were repealed and replaced by the more comprehensive LCCL [Louisiana Consumer Credit Law]." 53 Tul.L.R. 1454 (1979)
Our courts unanimously construed the Louisiana Small Loan Law strictly against lenders who were licensed under the law, engaging in no presumption or assumption, and stating that it was mandatory that the licensee bring his case well within the strict requirements of that law. Lyons v. Wheless, 2 So.2d 719 (La.App.2d Cir. 1941); Home Finance Co. v. Padgett, 54 So.2d 813 (La.App.2d Cir. 1951). The cited Tulane Law Review Comment, "Usury and Consumer Credit Law in Louisiana", observes in passing that an individual may "specifically agree" that his loan or credit sale is to be governed by the Consumer Credit Law, 53 Tul.L.R. at p. 1470. Emphasis supplied. Applying the principle of reasonably strict construction, we hold that an otherwise excluded debtor and creditor may avail themselves of the Consumer Credit Law by contract under § 3514, but this "contract" must be specifically and expressly written into the transaction they desire *1156 to have governed by that law and that the burden of proving this contract is on him who claims benefit of that law. Defendant has not met that burden in this case.

ATTORNEY FEES
In answer to the appeal, plaintiffs assert that the trial court erred in not awarding reasonable attorney fees under the Unfair Trade Practices Law (LRS 51:1405, 1409) and that we should award damages for frivolous appeal. We find no error.
LRS 51:1409 states that any person who suffers an ascertainable loss of money or movable property as a result of an unfair act or practice declared unlawful by § 1405 may bring an action to recover actual damages and attorney fees. The determination of whether an act or practice is unfair is left to the courts. Moore v. Goodyear Tire and Rubber Co., 364 So.2d 630 (La.App.2d Cir. 1978), stated that a practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. While the exacting of usurious interest is against established public policy and oppresses and substantially injures the consumer, we must observe the § 1409 is penal in nature and is subject to reasonably strict construction. We also observe the many exceptions made by the legislature to the usury law. See LRS 9:3504, 3505, CC Art. 2924. See also Bamburg, supra, and Meadow Brook Nat'l Bank v. Recile, 302 F.Supp. 62, 76 (E.D.La. 1969).[5]
Additionally, we have not been referred to a case from any other jurisdiction wherein damages and attorney fees under an Unfair Trade Practices Law were allowed solely because usurious interest was charged, knowingly or unknowingly. The rate of interest charged here (maximum 18%) did not ascend to the rate of unconscionability. Under these circumstances we will not impose LRS 51:1409 penalties and attorney fees.
While we have found appellant's contentions without merit, these contentions are not wholly without some legal basis. Under these circumstances, we deny damages for frivolous appeal. CCP 2164.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] $120,000 was borrowed to pay a portion of the $140,000 sales price of the property. $1,491 was borrowed to pay a credit life insurance premium.
[2] Before Act 205 of 1979, § 3503 stated that "... the amount of simple conventional interest on obligations bearing interest from date and secured ... by a mortgage on immovable property shall not exceed ten percent per annum."

§ 3501 states:
"Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted."
[3] The several sections of the law as they existed before the 1980 amendments were summarized in 53 Tul.L.R. 1463-1464 (1979):

"The [Louisiana Consumer Credit Law] ceilings, like those of the [Uniform Commercial Credit Code], are established according to whether the credit extended is open-end or closed-end. A lender may make a loan finance charge equal to a total of 36% per year on that portion of unpaid principal up to $800; 27% on that portion of unpaid principal up to $2,000; 21% on that portion of unpaid principal up to $3,500; 15% on that portion of unpaid principal over $3,500; or, in the alternative, a flat 18% per year on the unpaid balance of the amount borrowed. A credit service charge for sales may equal a total of 24% per year on the portion of unpaid balance of the amount deferred up to $1,750; 18% on that portion of the unpaid balance up to $5,000; or, in the alternative, a flat 18% per year on the unpaid balance of the amount deferred." Footnotes omitted.
[4] CC Art. 1965 reads:

"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
[5] Recile criticized the legally permissible loan discounting and capitalizing interest illustrated by many Louisiana cases which considered several statutes and CC Art. 2924.

"This provision is also embodied in Article 2924 of the Louisiana Civil Code in practically identical language. It has been consistently interpreted as authorizing the capitalization of interest ("discount") in a note.... It effectively eliminates any limitation to the amount of interest which a lender may charge as long as the interest is capitalized. Thus, a lender may legally charge 1000% interest. For example, a lender may loan $100 and exact a $1000 note payable in one year. Although the interest on such a note would be 1000%, the usury laws of Louisiana would not be applicable!
"This situation is shocking and is a disgrace to the laws of the State of Louisiana. It is utterly indefensible. It makes a mockery of the Louisiana laws on usury which are applicable only to the careless and sloppy lender. We can fathom no legitimate reason for the legislature's failure to abrogate this horror. No excuse whatsoever exists for the retention of this provision as much as one day longer.
"We are not alone in our criticism of this totally unconscionable law. Other courts have invoked the legislature to remedy this deplorable situation.... The law review commentators, without exceptions, have been consistently adamant in demanding legislative reform.... Yet the legislature still refuses to erase this abhorrent law from the books. And it is our unpleasant duty to apply this law, however pungent.
"The Louisiana law does have one redeeming feature, a truly small concession, in the form of a proviso. Loan discounting is exempt from the law of usury provided the note does not bear more than eight percent interest after maturity." 302 F.Supp. at p. 76. Citations and footnotes omitted.