# SUPREME COURT

OF THE

# STATE OF LOUISIANA.

EASTERN DISTRICT, JANUARY TERM, 1825.

East'n. District.
*Jan'y.* 1825.

HERMAN
*vs.*
SPRIGG.

If the sheriff, in copying a citation, insert words not in the original, it will not be void on that account.

Contracts in which usury intervenes are void, but the lender may recover back the money loaned.

Subsequent laws do not operate a repeal by containing provisions *different* from former ones: they must be contrary to them.

The borrower is not obli-

## HERMAN vs. SPRIGG.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This is an action commenced in the usual form, by the plaintiff, endorsee of a promissory note, against the defendant, maker thereof. The instrument is negotiable, and was made payable to one William Flood, who since the execution of it, is deceased, and by whom it was endorsed to the petitioner.

The defendant pleads,

1. An exception to the process of citation,

because a copy of it was not served according to law.

East'n. District,
*Jan'y.* 1825.

2. A general denial of all the allegations in the petition.

HERMAN
*vs.*
SPRIGG.

3. That the petitioner obtained the note, on which this suit has been commenced, by unfair means, viz: by an usurious contract—that the defendant never received any valuable consideration for it, the same having been executed for the accommodation of the payee. That the plaintiff had already commenced suit against the endorser's estate, and that it is to his succession alone resort can be had for payment.

ged to pay legal or other interest on money *received* on a usurious contract.

The first question for our decision on these pleadings, is the legality of the service of citation.

The illegality is said to arise from a variance between the original and the copy, and it consists in this: That in the original the defendant is cited to appear "at the office of the sheriff of the parish of East Baton Rouge, and comply with the prayer of the petition, or file his answer in the office of the clerk of the third district court, holden in and for the parish aforesaid, at the town of Baton Rouge." That the copy cites him to file his answer "in the office of the clerk of the district court holden for the

East'n. District,
*Jan'y.* 1825.

HERMAN
*vs.*
SPRIGG.

parish ———— at the town of Baton Rouge,"
leaving out the word "*aforesaid*," which in the
original refers to the parish of East Baton
Rouge; and that there is also a variance in
substituting the word "*at*," for those of "*in*"
and "*for*."

This objection is purely technical, and goes
to matter of form alone. For we apprehend,
the defendant had little difficulty from the copy
served, in knowing where he was cited to, and
what he was required to do. There being but
one district court appointed by law to be held
at the town of Baton Rouge, and that being the
court which sits for the parish in which the
village is situated; a notification to file an an-
swer with the clerk *of the district court sitting in
that town*, could not be misunderstood to be a
citation to file it with the *clerk of the district court
for that parish*; because there was only one
court of that style and description, which held
its sessions there. Technical however as the
objection is, the law requires *a copy of the cita-
tion* to be served on the defendant, and we are
not prepared to say what effect a variance be-
tween that copy, and the original would have,
were it not that on a comparison of the process

here issued, with the form prescribed by the

act of the legislature, we find that the original contained more than that act prescribes, and that the copy exactly pursues it.

The form directed for citations, by the act establishing the superior court, which form has been preserved by subsequent statutes for the district court, requires the defendant "to file his answer in writing in the office of the clerk of the superior court at ———— in ———— days after the service." The original in this case went further, and mentioned for which parish the court held its sittings there. This was more than was necessary—but *utile per inutile non vitiatur*, and it was not void on that account. The sheriff, however, was not under the necessity of copying any part of it, which was mere surplusage. It was sufficient to give the defendant a notice, as special as the form set forth in the statute. If it contained all that was required by the act, it was not in our opinion void, because it did not contain something more.

This brings us to the merits, for we deem it unnecessary to notice particularly the objection, that the plaintiff must look to Flood's estate for the payment of this note—a plea that

VOL. III. (N. s.)        25

East'n. District.
*Jan'y.* 1825.

HERMAN
*vs.*
SPRIGG.

the endorsee of a promissory note must pursue
the endorser alone, and cannot recover against
the maker, because he has commenced an ac-
tion against the party who transferred it, we
believe to be without precedent, as it is cer-
tainly without either reason, or law, to support it.

The first question to be decided is, whether
the contract by which the plaintiff obtained an
interest in the note sued on *be void?* If it should
turn out to be so, he of course has not acquired
a legal right or title to the instrument sued on.

On this point we have not any doubt. It
most clearly appears, by a reference to the
various laws of Spain in relation to usury, that
contracts, in which it took place, were consid-
ered as null, and of no effect. Such also is the
opinion of the most esteemed commentators on
these laws, that we have been able to consult.

To cite in support of this conclusion, the
various statutory provisions, by which from
time to time the several monarchs of Spain en-
deavored to prohibit the loan of money at ille-
gal interest, is unnecessary; we deem it suf-
ficient to refer to a provision contained in one
of the latest edicts on this subject. We al-
lude to that of Phillip the 3d. promulgated in
1608, in which, after prescribing the penalties,

that both borrower and lender, are liable to, who enter into usurious contracts; it declares, *que sea en si ningun, y de ningun valor, ni effecto, qualquier contrato, o concierto, que contra lo susodicho se hiciere; para que de acqui adelante no valga ni se use de el, so las dichos penas."* That every contract, or agreement, which shall be made against the foregoing, shall be null and of no value; and that henceforward, no one shall avail himself, or profit by such contracts, under the penalties already mentioned." *Novissima Recop. lib.* 10. *tit.* 1. *l.* 21. which is, *Ley.* 15. *tit.* 18, *lib.* 5, *Nova Recop.* The clear and positive manner, in which the legislator has thus expressed his will, dispenses with the necessity of construction, or rather leaves no room for it. But in a case of so much importance to the parties and expectation to the public, we refer to the following authorities, to shew, that our understanding of the law, is that of the jurists of Spain:

*Los contratos e instrumentos publicos, en que interviene usura, son nulos. Curia Phil. lib.* 1, *cap.* 1, *n.* 36, *verbo usura.*

" The contracts and public acts, in which usury intervenes. are null."

East'n. District.
Jan'y. 1825.

HERMAN
vs.
SPRIGG.

" *Son nulos y no trahen aparajada execucion todos
los contratos en que interviene usura.*"   *Febrero, p·
1, cap. 4 § 2, n. 37.*"

" The contracts in which usury is practised
are null, and do not carry with them the force
of the thing judged."   To the same effect is,
*Siguenza, lib. 1, cap. 11, n. 22.*

The next enquiry is to what extent is the
contract null?.   Is it so, both for the prin-
cipal sum paid, and interest, or only for the in-
terest received?   This is the point, which was
most contested in argument, on which the most
doubt exists, and on which our most serious at-
tention has been exercised.

The counsel, who contended for the nullity
of the entire contract, relied on the provision
already cited of the *novissima recopilacion*, and
others of the same tenor and effect, which are
found in that work.   Among these is a clause
in one of the penal statutes of Spain, which
provides, that the principal sum in the contract
shall be decreed to the party upon whom the
usury has been practised, *la suerte principal sea
para la parte contra quien se exercitaren las usuras.*
From this provision he argued, that if the prin-
cipal sum in the contract was given to the bor-
rower, he might well offer, as an exception

when sued, the rule of law which shews the

money to belong to him, and which money would be decreed to him, in a different action. *Novissima Recopilacion,* lib. 12, tit. 22, ley 4, which is, *ley* 5, *tit.* 6, *lib.* 8, *Nova. Recop.*

Admitting this argument to be entitled to much weight, in an ordinary case, it might still be doubted, whether the defendant, in the suit before us, could avail himself of this provision, for he was not the person, *upon whom the usury was practised,* it was the endorser who transferred it, that was the sufferer. But we are saved the necessity of examining this question, for by a subsequent pragmatic of Philip the 3d, (which is the law we have already cited as to the nullity of the contract,) this provision is repealed, both borrower and lender are declared to be culpable, and a different distribution of the penalties is directed. Se also *Curia Philip. lib.* 2, *cap.* 1, *n.* 40, *verbo usura.*

We have then the question presented on the general provisions found in the laws of the Recopilacion, on the subject of usury. These laws declare that the usurious contract or agreement is null and void. If they stood alone, we would perhaps feel compelled to say what we have often said: that where the law did not

East'n. District.
Jan'y. 1825.

HERMAN
vs.
SPRIGG.

distinguish we should not; and that, as the payment of the principal sum *made a part of the original contract*, it fell within that provision, which declared *that contract void.*

But there is an earlier statute to be found in the laws of Spain, than any we have yet referred to, which has a most important bearing on the true construction of the subsequent enactments, on the same subject. It is the 31*st law of the 11th title of the 5th partida.*

*Veinte maravedis, o otro, recibiendo promission del, quel de treinta maravedis, o quarenta por ellos tal promission non vale, nin es tenido de la cumplir el que la face, si non de los veinte maravedis que recibio, esto es, porque es manera usura.*

"If a man gives 20 maravedis, or any other sum of money, and receives from one a promise to return 30 or 40, such promise is not valid; nor is the obligor bound to perform it, except for the money received, because it is a species of usury."

By this law, then we have a provision that a promise to give illegal interest is void .So far, it is in conformity with the provisions subsequently enacted on the same subject on which the defendant relies. But it defines, by the latter part of the clause cited, what is meant by

East'n. District.
*Jan'y.* 1825.

HERMAN
*vs.*
SPRIGG.

the contract being void. It limits the nullity to the amount of the interest promised; and declares that, as to the money paid, and received, it is binding, and may be enforced.

Has this provision been repealed? We think not. We have carefully examined all the laws that treat of the same matter, and find nothing which would justify such a conclusion. They, in general terms, declare contracts for illegal interest, void. So does that of the partida already cited. The re-enactment of a general provision contained in a former law, to which an exception was attached, does not repeal that exception; because the intention to repeal is never presumed, and both provisions may well stand together. *Toullier, Droit Civil Francais, vol.* 1, 120, *no.* 154. It is true, these statutes contain additional regulations for the prevention of usury, to those found in the law of the Partidas; but there is no rule of construction better established, than that subsequent laws do not operate a repeal, by containing provisions *different* from former ones. They must be *contrary* to them. There are few which this court has had occasion more frequently to recognize. It is a principle, says a modern author, to whom all who are in search of truth on

legal questions, may recur, with a certainty almost, of finding it on every subject on which he treats, that the dispositions of anterior laws, not contrary to those which are posterior, are understood to exist in the latter, and make a part of them. *Posteriores leges ad priores pertinent nisi contrariæ sint.* *Toullier, vol.* 1, 122 & 124, *nos.* 156 & 157. *Dig. lib.* 1, *tit.* 3 *l.* 28— 10 *Martin, De Armas, case.* 12 *ibid.* 697. *Vol.* 1, 160. 2 *ibid.* 32.

Applying this rule to the laws already referred to, we are satisfied that that of the Partidas is not repealed, and that taking it as still making a part of the subsequent statutes, it compels the repayment of the principal sum.

Were we doubtful on this question, the deference justly due to the concurrent testimony of the various commentators on the laws of Spain, would induce us to adopt their construction.

In the *Curia Philipica*, it is stated that usurious contracts are null; but this, says the author of that work, is to be understood as to the interest, and not as to the principal sum, according to the law of the Partidas. The law he refers to is that we have already cited. *Curia Phil. lib.* 2, *cap.* 1, *no.* 36, *verbo usura.* Such is

also the doctrine of *Febrero* and *Siguenza.* *Fe-brero, p.* 1, *cap.* 4§2, *no.* 36. *Siguenza, lib.* 1, *cap.* 11, *no.* 22.

The opinion just expressed leaves open another question, and that is, whether the money lent, must be repaid with interest at a legal rate.

The plaintiff has contended that he has a right to recover the amount loaned, with interest at ten per cent. This position receives some countenance from one of the Spanish writers we have already quoted, and it is also supported by one of the judges of the late superior court of the territory of Orleans. In a case similar to this, he decided, that, he " knew no other interpretation to be given to the word usury than the taking a greater rate of interest upon a loan than is fixed by positive law or established usage." Acting under this impression he held that the person, who had lent money at an illegal rate of interest, could recover the sum loaned, and ten per cent for the use of it. *Siguenza, loco citato,* 1 *Martin,* 7.

With this view of the subject we have after the most mature deliberation, found ourselves unable to concur. Interest, by the laws of this state must be either *conventional* or *legal.* The

first is by the agreement of the parties. The second by the commands of the law, in cases where it has deemed proper to afford compensation to the lender. Under which of these heads does the claim now presented fall? Certainly not under the latter, for the lending money on *illegal* interest, is not one o f the cases in which *legal* interest is given by our statutes.— Does it then come within the former? That we have seen results *from the agreement of the parties alone.* Where then is the consent of the borrower shewn in this case to pay ten per cent, and that of the lender to receive it? The record exhibits no such evidence. But it is said, that as the former promised to pay 18 per cent. it must be presumed, nay it cannot be doubted, that he would have been willing to give ten. This is perhaps true: it requires however two parties to a contract, and how stands the presumption on the other side? The very reverse of that by which assent is supposed on the part of the person taking the loan. Doubtless we would have the consent of the lender now, to take as much as he can get, *but it his consent at the time of making the contract, which must be looked to;* and viewing it in relation to his intention then, there cannot be

East'n. District.
*Jany.* 1825.

HERMAN
*vs.*
SPRIGG.

a question, that he would not have consented to receive the amount he is now willing to take. So far then, as the assent of the parties, at the period of contracting, can be assumed as the basis, on which a modification of the rate of interest, is now to be made by this tribunal; it is clear that no such assent has been shewn, or can be presumed.

The strongest argument which has suggest-itself, to us in support of the plaintiff's pretention, is, that a contract being shewn for conventional interest, it is the duty of the court to give that contract effect so far as it is legal.— But to this, we think there is a satisfactory answer. This contract does not consist of several parts, it is one, and entire; to pay interest at an illegal rate for the use of the money borrowed. Such agreement is, as we have already seen, null. If it be, then, it cannot be good in part, nor furnish the consideration for raising a promise to pay a lesser sum.

Admitting that it could, there would still remain an intrinsic difficulty, which could not, so far as we can see at present, be surmounted. By law, conventional interest must not only be agreed on by the parties, but the *amount* must be fixed by them. *Civ. Code*, 488, *art.* 32. No

rate has been established here, and we cannot make one. And if we attempted it, what rate could we affix, one per cent, or ten?

We could add to these arguments, others, which might be fairly drawn from the policy of the law; of the duty of this court to sustain it; and how poorly such a construction would give that policy effect. To sanction the claim set up, would in truth be virtually sanctioning an evasion of the prohibition; and encouraging the citizen in a violation of the law, by rewarding him with the highest rate of interest which he could have obtained; had he obeyed it. But we forbear to follow the subject any further upon general principles, for however unsatisfactory our conclusions may appear on these grounds, to the minds of others; there cannot be a doubt in relation to the judgment which this court should pronounce, when the question is placed on the following consideration.

We have already shewn that by the laws contained in the *Novissima Recopilacion*, all contracts reserving an illegal interest are null and void, and it has been seen that were it not for the provisions of a statute anterior to those laws, it would be doubtful if these contracts would not be void, not only for the interest, but

also for the principal. If that law then, ena-
bles the plaintiff to recover any thing, it must
also have its effect as to how much he can re-
cover; and its provisions are positive, that *no-*
*thing but the naked sum lent can be got back.* *Part.*
5, *tit.* 11, *l.* 31.

It was insisted, that as the maker of this note
had received a valuable consideration for it, he
could not avail himself of the plea of usury,
committed by others, and that he had no con-
cern with the subsequent transactions between
the endorser and endorsee. To this argument
the answer given at the bar is conclusive. The
endorsee, who sues on a promissory note, must
shew that the right and title of the payee has
legally passed to him; that right cannot pass to
him by a contract which is illegal and void.
Consequently the plaintiff is without title to
demand payment of the whole amount of the
note. 1 *Starkie,* 385. *Douglass,* 736.

The sum paid by the plaintiff appears from
his answer to an interrogatory, to be four thou-
sand eight hundred and fifty-one dollars, and
for that amount he is entitled to recover.

It is therefore ordered, adjudged and de-
creed, that the judgment of the district court
be annulled, avoided and reversed. And it is

East'n. District.
*Jan'y.* 1825.

HERMAN
*vs.*
SPRIGG.

further ordered, adjudged and decreed, that the plaintiff do recover of the defendant, the sum of four thousand eight hundred and fifty-one dollars, with costs in the court below, the appellee paying those of appeal.

*Eustis* for the plaintiff, *Hennen* for the defendant.