MARVIN, Judge.
After the completion of construction and the closing of a 1.4 million dollar, FHA insured, permanent loan on plaintiff partnership’s apartment project, the partnership sued to recover from its mortgage broker and its interim-financing bank $164,000, which it paid the bank as interest and “yield fees” during construction.
The lower court rejected the partnership’s demands except for $56 “interest on interest” claim against the bank. The partnership appeals. The bank answered the appeal, contending the $56 claim also should have been rejected. We affirm.
The partnership contends the amount paid the bank was usurious in violation of state law and was also contrary to financing commitments it had with the mortgage broker and FHA, which commitments the partnership argues were binding on the bank.
Financing for the project was obtained under Section 236 of the National Housing Act of 1964 (12 U.S.C., as amended). Real estate for the project was purchased from several owners, including one Donald R. Thames, who was an officer of First Fidelity Mortgage Company, the mortgage broker. Thames died before this controversy arose. In 1972, Thames certified to FHA that First Fidelity would provide interim and permanent financing for the project at no discount. FHA agreed to insure a loan of $1,387,700 at seven percent annual interest payable over 480 months. Among the charges and fees which FHA approved was an “initial service charge” (obviously not considered a “discount”) of $27,574 to be paid by the partnership to First Fidelity (two percent of the loan). One mortgage was executed by the partnership along with other contracts relating to the financing of the project on November 28, 1972. These contracts expressly provided that construction would be completed by November 27, 1973. Installment payments on the mortgage began December 1, 1972, but were interest only payments until May 1, 1974, some six months after the completion date. The six-month period allowed a time to achieve a desired percentage of occupancy in the project. The periodic installment payments were paid by the partnership. The $27,574 initial service charge is a part of the $164,000 sued for. One-half of the service charge ($13,787) was paid by First Fidelity to American Bank & Trust Company as an inducement for interim financing. Permanent financing was provided by a government sponsored agency (FNMA).
First Fidelity endorsed and assigned the note and mortgage to the bank as security for the interim financing. The partnership periodically drew funds from the bank (eventually $1,338,300) and executed a hand note on each occasion at seven percent interest, payable on demand.
Construction was not completed by the scheduled completion date (November 27, 1973) because of matters not involving First Fidelity or the bank. At that time, and because of increasing interest rates and inflation, as well as demands by a participating bank; American Bank considered that its commitment to furnish seven percent construction money to the partnership had ended. American Bank so informed the partnership and demanded an increased rate of interest (12%%) or a one percent “yield fee” of $13,787. The partnership elected to pay the yield fee, which was sometimes referred to by the litigants as a service fee.
Construction was not complete in March, 1974, and the bank again demanded a yield fee or increase in interest from the partnership. The partnership refused and the bank’s attorneys then informed the partnership that the loan was in default and demanded payment of principal ($1,235,000), plus additional yield fees and interest through June 19,1974, and threatened foreclosure. On May 13, 1974, the partnership paid, under attempted protest, $32,377 in yield fees and past due interest demanded by the bank.
Because of the partnership’s delay in paying the installment interest payments, the American Bank paid its participating bank $56 as a late fee or additional interest in February, 1974. American Bank wrote the *1023 partnership about this and stated it would be necessary for the bank to charge “interest on the interest” which became due on February 1. The partnership paid the $56 to the bank, apparently as a matter of routine.
Construction was completed and the “final closing” for permanent financing occurred about September 19, 1974. The mortgage note was obtained from American Bank by First Fidelity and was sold and transferred to the government agency (FNMA) which had earlier agreed with First Fidelity to handle the permanent financing. American Bank was paid in full ($1,338,300) by First Fidelity when the permanent loan proceeds were received from FNMA ($1,387,700).
On August 21, 1975, the partnership brought suit. It contends that First Fidelity and American Bank should be treated as one entity because the two corporations have some overlapping directors, particularly the attorney (Boles) whose firm closed the loan, and because all three have offices in the same complex of buildings. The partnership asserts that all of the paperwork, agreements, and development of the project was undertaken because of the guarantees and conditions originally made to it by the late Mr. Thames and consequently, it was not obligated to pay more than the mortgage note provided because there was only one loan at seven percent interest from the beginning. Because of these circumstances, the partnership argues it was at the mercy of the mortgage broker and the bank, both of whom were being directed by Attorney Boles.
Boles is an officer and director of First Fidelity and the American Bank. His law firm is counsel for both corporations. The late Mr. Thames did require that the Boles firm (as counsel for First Fidelity) handle the loan closings and legal work. The lower court found, and we agree, that these factors do not lead to the conclusion, as the partnership contends, that one entity was legally the alter ego of the other or other two. The principal partner of plaintiff acknowledged he had discussed with the partnership’s counsel the preliminary negotiations before he agreed to this arrangement. It is also shown that the partnership was fully aware of Boles’ association with and representation of the two corporations. In addition, the bank was not a signatory to the several writings executed by the partnership, the mortgage broker and sometimes by FHA. The only writings between the bank and the partnership before the controversy were hand notes at seven percent interest due on demand for funds loaned by the bank to the partnership.
The crux of the partnership’s argument is that by the commitment of Thames and the FHA it was guaranteed seven percent money during the interim construction phase of the project even though the construction continued for several months past the express completion date (November 27, 1973) to September 19,1974. The American Bank fully honored the seven percent interim commitment until November 30, 1973, after which time it demanded and eventually received the “going” (and higher) rate of interest equivalent to 12V2% percent per year in the form of yield fees.
Nothing in the multitude of documents between the partnership, the mortgage broker and FHA guaranteed interim financing money at seven percent interest beyond the contemplated completion date of November 27, 1973. The partnership was well aware of First Fidelity’s status as a broker and knew that it was dealing directly with the bank for interim financing by hand notes secured by the mortgage note as well as by the personal guarantees of plaintiff’s principal partners. The partnership was also aware from the beginning that the mortgage note would partially secure interim financing and that upon final closing, the mortgage note would be transferred or sold to FNMA under the permanent financing commitment. Indeed, plaintiff’s complaints are not directed toward the use of the mortgage note in this manner. C.C. Arts. 3133, 3145, 3146, 3154-3175. Each demand note signed by the partnership expressly states it is secured by the mortgage note of November 28,1972, for $1,378,700 as well as by the *1024 personal guarantee of individual partners of plaintiff. Likewise, we do not find the charges demanded by the bank and paid by the plaintiff partnership after November 30, 1973, to be usurious. R.S. 9:3505(3); R.S. 12:703.
R.S. 12:703 provides that partnerships in commendam may agree to pay interest in excess of the maximum allowable conventional interest and prohibits the partnership which has so agreed from claiming usury. R.S. 9:3505(3) expressly provides that discount fees, service fees, origination fees or similar fees paid by anyone on a loan secured even indirectly in part by a mortgage on immovable property, shall not be considered as interest. The trial court correctly found that the partnership had not established that the transaction in question was usurious.
The charges in question (service or yield fees equivalent to I2V2 percent interest after November 30, 1973) were paid by the partnership after being proposed by the bank and the partnership’s “protest” of the latter payments on and after March 20, 1974, were nothing more than a reservation of its rights to litigate its contentions here under consideration. Hicks v. Levett, 19 La.App. 836, 140 So. 276 (2d Cir. 1932).
The payment of $56.03 complained of arose under these circumstances: On February 14, 1974, the bank wrote plaintiff that interest payments were past due and that the bank had forwarded to the participating bank its portion of the past due payments. The letter stated that the bank could not “continue” such a practice without charging interest for payments forwarded to the participating bank. On February 20, 1974, the bank charged the partnership on a charge slip a “late fee” on nine items. This fee totaled $56.03. The February 14 letter referred to charging interest on the interest paid to participating bank. Pretermitting any consideration over the terminology (late fee versus interest on interest) and the alleged voluntary payment, we find, as did the lower court, that the $56 charge under whatever designation cannot be upheld. R.S. 9:3505(2) approves of late charges on delinquent interest installment payments, but requires that the method of determining the late charge be written in the note or the mortgage securing the note. There was no agreement or contract by the partnership in this instance to pay the American Bank whatever the bank was charged by its participating bank. The partnership was not a party to the participation agreement between the two banks and the American Bank’s attempt to pass on the charge to the partnership cannot be allowed, notwithstanding the partnership’s payment of the charge. C.C. Art. 1939. For this same reason, neither the charge nor the payment makes the other transaction (hand notes and payments thereon) between the American Bank and the partnership usurious. The $56 charge under the participation agreement was separate from the hand note transactions, similar to the circumstances of Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (La.App. 4th Cir. 1965), writ refused. The $56 charge was not agreed to by the partnership, and in that respect, the charge was not a “. contract for the payment of [usurious] interest . . .” under R.S. 9:3501.
For the detailed reasons assigned in an excellently reasoned opinion below, and summarized here, and at appellant’s cost, judgment is
AFFIRMED.