ON REHEARING
MARVIN, Chief Judge.
In this action filed in 1990 to foreclose on a 1966 vendor’s lien note that was payable in monthly installments over 23 years, this court granted a rehearing to consider whether, as the original opinion of the three-judge panel held, a “clerical error” had been made and no usurious interest had been “collected,” or whether, on the other hand, an LRS 9:3501 “contract” for usurious interest arose from the circumstances which resulted in usurious interest being paid and received.
Rejecting the plaintiffs’ demands for a judgment for $9,439, the trial court’s judgment forfeited the interest paid, awarding reimbursement of a part of that interest to the debtor-defendants. The opinion of this court on original hearing reversed that judgment and rendered judgment for the creditor-plaintiffs for $8,398.77, the “recalculated” balance owed on the note.
On rehearing, we amend and affirm the trial court’s judgment, recasting to order all interest forfeited against the principal of the note and deleting the award of reimbursement to the debtor. LRS 9:3501. CC Arts. 2001, 2924. Paulat v. Pirello, 353 So.2d 1307 (La.1977); Bamburg v. Lavigne, 403 So.2d 827 (La.App. 2d Cir.1981), J. Fred Jones, dissenting, writ denied; Blanchard v. Progressive Bank & Trust Co., 413 So.2d 589 (La.App. 1st Cir.1982).
POSTURE AND ISSUES
The trial court concluded that the creditor’s “collection of interest upon interest” constituted usury. The trial court’s judgment ordered plaintiffs to “reimburse” defendants $9,138.39, reasoning that the debtor, Williams, had paid a total of $18,702.39, from which the total sales price of $9,564 was deducted to reach the “total interest of $9,138.39.” Plaintiffs, a family partnership, appealed that judgment. We shall hereafter sometimes refer to plaintiffs as the creditor and to defendants as the debtor.
On rehearing we note that the creditor acknowledged, below and here, that its method of calculating and adding interest annually to the principal on the anniversary of the note for 23 years was incorrect as a matter of law. The creditor attempted to explain below and here that the debtor’s failure to pay regularly and the creditor’s ignorance of the prohibition against “the accrual” of interest on interest, combined to “create the illusion,” but not “the reality,” of usury.
In support of a motion for a new trial, the creditor argued, and argues here, that the creditor had not collected usurious interest, but had simply accrued or miscalculated the interest, explaining that the “miscalculation could not have arisen if plaintiffs had insisted upon prompt payment.” Distinguishing the “accrual” from the “collection” of usurious interest, the creditor asserts that if the debt- or had made each payment timely he would have paid a total of $20,932.50 over a period of 23 years and four months to satisfy the $9,489 note about June 4,1989, and therefore no usurious interest was collected.
After usury was pleaded as an affirmative defense, the creditor offered below and here to correct the miscalculation and reallocate each of the debtor’s payments to principal and allowable interest, contending that $8,398.77 in principal is yet due on the $9,489 note.
*6 THE FACTS
The note, dated February 14, 1966, for $9,489, was payable in monthly installments of $75 beginning March 4, 1966, “with interest on each installment at the rate of eight percentum per annum from date.” The credit sale stated that “said note to bear interest on the unpaid principal balance at ... eight [percent] per annum and is payable in monthly installments of [$75] each ... such installments to be applied first to the payment of interest on the principal sum or on any unpaid balance thereof at the aforesaid rate of 8% per annum and the remainder to principal.”
Differences in the language of the credit deed and the note and the manner in which the creditor maintained a ledger of Williams’s account from 1966 through 1989, caused the trial court to initially conclude that the note called for eight percent interest on past due interest of eight percent and was usurious on its face. The court said that the evidence “shows conclusively that plaintiff[s] in fact charged eight percent interest upon interest originally charged on the outstanding principal balance at the rate of eight percent, and did in fact collect such.” The record affirmatively shows this.
After the hearing on the creditor’s motion for new trial, the trial court modified its earlier finding that the note was usurious on its face. The court nevertheless adhered to its ultimate ruling in favor of the debtor, saying, “Although [the creditor] did not intend to collect interest at a usurious rate nor did the contract provide for the collection of usurious interest, the fact remains that interest was collected at a usurious rate.”
The opinion of the three-judge panel after the original hearing concluded that neither the written obligation of the debtor nor the manner in which the creditor charged interest [computing interest once a year in some fashion and adding that interest to the principal balance] was usurious.
We need not decide whether the written obligation was usurious, but shall agree, ar-guendo, it was not, because the manner in which the creditor charged interest on the ledger clearly reveals the trial court was correct in finding that usurious interest was paid and collected as a matter of fact. We summarize some of the facts from the opinions of the trial court and of the three-judge panel on original hearing. We attach a copy of the note and the ledger sheets the creditor maintained on the debtor’s account for 23½ years as Appendix A.
Eight percent per annum interest was the maximum conventional interest rate allowed in 1966 by CC Art. 2924.
The ledger shows the history of the note from its inception in 1966 through August 5, 1989, the date of the debtor’s last payment before his death on August 16, 1989.
The maximum annual interest the creditor could have charged on the $9,489 note was $759.12 if the debtor had paid nothing. Eleven of the 23 annual interest-to-date charges added to the principal exceeded $759.12.
The interest-to-date charges on the creditor’s ledger total $17,801.30. According to the trial court, the debtor’s sporadic payments over 23½ years totaled $18,702.39 [including the $75 cash down payment]. This amount is less than the creditor would have received ($20,932.50) if all payments had been timely made and properly credited through June 4, 1989, according to plaintiffs’ CPA.
The creditor foreclosed on the 1966 note in March 1990, about 7½ months after the debt- or’s last payment (August 5, 1989) before his death on August 16, 1989. The creditor prayed for judgment ($9,439) that was $50 less than the principal of the 1966 note. Usury was raised as an affirmative defense to the creditor’s foreclosure action.
THE USURIOUS METHOD
According to the creditor’s ledger, in the first year of the note the debtor, Williams [no relation to defendants’ attorney], paid eleven $75 installment payments ($825) in cash and by checks on these dates: 3/5, 4/18, 5/23, 6/7, 7/7, 8/4, 10/4, 10/29, 11/15, in 1966, and on 1/10 and 2/13 in 1967. Other payments made in the first year by NSF checks, which were charged back to the debtor, are not counted. The 11 payments were simply entered on the *7 ledger sheet on the date each was paid and were not simultaneously credited to principal and interest.
Instead, on and shortly alter the first anniversary (2/14/67), Williams was charged $782.12 annual “interest” computed in some manner not explained in the record. This annual interest was added to the principal to make a new principal balance. When a twelfth payment by NSF check was returned on 2/21/67, $75 was charged back to this “balance.” The new principal balance (combined interest, computed in some unexplained manner, and principal) became $9,396.12. [Even by the creditor’s own allegedly correct “reallocation” in a post-trial brief to show what principal was yet owed, the principal balance on the first anniversary is shown to be $9,371, about $25 Zess.]
Thus the $9,396.12 principal “balance” after the first anniversary of the note became combined principal and usurious interest. This skewed the true principal of the note, but became the “balance” on the creditor’s ledger after the first anniversary of the note. This method was followed on each anniversary through the 23rd anniversary of the note, February 14, 1989. We illustrate the creditor’s method on the next anniversary.
On the second anniversary of the note (2/14/68), annual usurious “interest to date,” was again added to make a new “balance.” This was interest on interest which derived in part from the skewed balance created the year before. After annual interest was added, the ledger balance on the second anniversary was $9,371.51. [The creditor’s own “reallocation” shows that the true principal balance on the second anniversary should have been $9,358.28.]
The plaintiff who kept the ledger testified that he “let Mr. Williams see these [ledger] sheets,” saying, “I think he got a copy of [th]em each year, in fact.” This witness further explained that when Williams would come in and make his payments, “I accepted his money and he had a receipt book he kept himself. And I filled it out for him.”
Another plaintiff testified that in 1976 he went to the debtor to have the note acknowledged when it was about 10 years old. This witness said he and Williams then talked to Williams’s attorney who advised that the note was still “good” because payments were being made on it, “it’s not necessary to sign it, so we didn’t sign it.” This witness explained that he took the ledger “figures” with him when he talked to Williams and that Williams “knew the balance [in 1976].”
The witness who maintained the ledger candidly explained to the trial court that he did not know that his method of charging and crediting interest was illegal and that he thought it was permissible for him to compute and add to the principal each year interest figured retroactively, generally in the manner above described, rather than monthly or at the time the debtor made each payment. The witness attempted to explain that when the debtor did not make a payment he would not be charged interest on interest for that month, but “now annually, he would be charged interest on interest ... in a way.” His explanation continued that if the debtor owed $100 and “never paid anything. At the end of the year [he] would owe me $108[, and] ... would I [sic] not be fair to charge him interest on that $108?”
The usurious skew from the first anniversary and the annual interest added to interest and principal on each anniversary of the note, resulted in interest being charged on interest for 23 years, compounding the usury.
On 19 of the 23 anniversaries of the note, the ledger “balance” of the $9,489 note exceeded the face of the note. If the debtor had paid nothing for 24 years and one month [February 1966 — March 1990, when the foreclosure action was filed] and pretermitting liberative prescription, the total interest due on the note would have been $18,282.14. The creditor’s annual interest charges through the 23rd anniversary of the note on February 14, 1989, totaled almost that much, $17,801, notwithstanding that the debtor made over 200 payments on the note.
A cursory examination of the creditor’s ledger shows that the debtor made most of his payments in cash and that his 211 payments ranged from $5 to $300 (more often $75 or $150), before his death 282 months after the note was executed. The debtor averaged paying about $66 a month during *8 the 282 months ($66 x 282 = $18,612), notwithstanding that he made no payments during the fourth year of the note, which began February 14, 1969.
We tabulate and total the ledger interest-to-date charges, marking with an asterisk the 11 annual usurious charges that patently exceeded the maximum allowable $759.12 per year. We show the amount paid during each year of the note, the annual interest charged and added to the “balance,” and the ledger balance thereafter on each anniversary, also marking with an asterisk the 19 years that the ledger balance exceeded the $9,489 face of the note:
Feb. 14 Anniv. Year Amount Paid Int. Added To Principal Ledger Balance
0. 1966 $ 9,489.00
1. 1967 $ 825 $ 732.12 9,321.12
2. 1968 675 725.43 9,371.51
3. 1969 830 724.97 9,271.48
4. 1970 -0-741.72 10,013.20*
5. 1971 790 778.86* 10,002.06*
6. 1972 900 764.16* 9,866.22*
7. 1973 900 762.29* 9,728.51*
8. 1974 900 751.28 9,579.79*
9. 1975 825 741.63 9,496.42*
10. 1976 675 784.46* 9,605.88*
11. 1977 675 748.22 9,679.10*
12. 1978 825 749.57 9,603.67*
13. 1979 525 817.08* 9,895.75*
14. 1980 675 829.86* 10,050.61*
15. 1981 600 850.55* 10,301.16*
16. 1982 600 873.10* 10,574.26*
17. 1983 525 863.94* 10,838.20*
18. 1984 1,800 843.05* 10,031.25*
19. 1985 825 769.61* 9,900.86*
20. 1986 900 739.67 9,740.53*
21. 1987 825 749.49 9,665.02*
22. 1988 1,025 740.86 9,580.88*
23. 1989 1,054 719.38 9,175.26
TOTAL ADDED TO PRINCIPAL AS “INTEREST TO DATE” $17,801.30
THE LAW
Where usurious interest is charged, paid and credited over some period of time on a note that is not usurious on its face, albeit “in ignorance of the law,” without bad faith or illegal intent, and whether the usurious interest is reluctantly or agreeably paid by the debtor, the law voids the implied agreement or contract for usurious interest and requires forfeiture of all interest paid during the period the usurious contract endured. LRS 9:3501. Karmgard v. Southland Mtg. & Title Co., 341 So.2d 1109 (La.1977); Bamburg, supra; Blanchard, supra.
In such circumstances, the creditor “may not avoid forfeiture of payments made and received as usurious interest by recharacter-izing them as payments on principal, after the [debtor asserts] their usurious character.” Paulat v. Pirello, supra, 353 So.2d at 1308.
We agree with the creditor’s counsel that this creditor’s method described above was “incorrect os a matter of law.” We add *9 that this method of charging and collecting interest produced, not the “illusion,” but a patently unlawful, or usurious, rate. CC Arts. 2001, 2924; LRS 9:3501. See cases cited supra.
The legislature has made exceptions to CC Arts. 2001, 2924 and to LRS 9:3501. See, e.g., § 3509.2, “The general prohibition against the recovery of interest upon accrued interest, as expressed in Civil Code Article 2001, is subject to ... exceptions” which are thereafter listed, none of which is applicable here.
Interest may be capitalized in a note payable over a period of time, but only when the interest on the note runs from maturity at not more than the maximum allowable interest rate. A note may be “discounted.” CC Art. 2924. Interest on a note that includes capitalized interest from date is usurious if the total of the stated interest from date and the capitalized interest exceeds the maximum allowable rate. Spencer v. Boucher, 587 So.2d 97 (La.App. 2d Cir.1991), writ denied; Paulat, supra.
Whether usury is pleaded as a shield or as a sword, a debtor may assert usury either before or after the principal obligation is fully paid, notwithstanding that the note is not usurious on its face. Paulat, Bamburg, Blanchard, cited supra.
WHAT CONTRACT?
Louisiana law has long provided that “any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.” This was true under Spanish law once in effect in this state (Herman v. Sprigg, 3 Mart. (N.S.) 190 (La.1825)) and under revised statutes thereafter adopted. See Walden v. City Bank, 2 Rob. 165 (La.1842); Richards v. Presler, 2 La.Ann. 264 (1847); Crane v. Beatty, 15 La.Ann. 329 (1860). The forfeiture policy continued through the revised statutes beginning in 1870 and is now contained in LRS 9:3501.
We have said that charging interest on interest has been prohibited in Louisiana at least since the Civil Code of 1825. Southern Eq. & T. Co. of Shreveport, Inc. v. McCullen, 319 So.2d 511 (La.App. 2d Cir.1975).
The courts very early recognized that a written contract, against which parol evidence at that time might not have been admitted, was distinct from the “real” contract and that parol evidence should be admitted “on account of usury.” Perillat v. Pueche, 6 Mart. (N.S.) 717, 719 (La.1828). Our emphasis. A defendant-obligor on a note, who is pleading usury as a defense, indeed is “entitled to the production of the plaintiffs’ accounts [that] might tend to establish his de-fence [sic] ...” Waters, Camden & Co. v. Briscoe, 11 La.Ann. 639, 640 (1856).
Where usury is a defense to a suit on a promissory note, it is permissible to show the usury was given by any competent evidence. CC Art. 2924; Karmgard, supra. The usurious contract must not be confounded with the instrument in writing by which it is witnessed. Paulat, supra, citing CC Art. 1762; Bamburg, Blanchard, supra.
The fact that the written contract was not facially usurious is not a defense to the application of § 3501 where it is shown that the interest paid and accepted under that contract as implemented and consummated by the parties became usurious. Bamburg, cited supra.
The argument or principle that usury is determinable solely from the face of the written contract “does not ... legitimize, as non-usurious, payments exacted after execution of a note not usurious on its face, when such subsequent payments in fact and by agreement of the parties constitute usurious interest.” Paulat, 353 So.2d at 1310, our emphasis. See also Bamburg, 403 So.2d at 831.
CLERICAL ERROR VS. IMPLIED AGREEMENT
In one circumstance a creditor was found to have made a “clerical error” in stating a usurious rate of interest that was held to be of no consequence. See Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082 (La.1985), on which the three-judge opinion on original hearing relied.
The three-judge opinion correctly notes, however, that the holder of the Huddleston *10 note did not charge Huddleston or collect usurious interest payments from him. Compare Blanchard, Paulat, and other eases cited supra. See also Roy A. Schnebelen & Assoc. v. Am. Bank & Tr., 349 So.2d 1020 (La.App. 2d Cir.1977). The bank charged Schnebelen for the interest payments that that bank made to another participating bank and for late fees totaling $56 that the participating bank charged on the interest payments made by Schnebelen’s bank. The $56 one-time, or singular, late fees charged to Schnebelen was disallowed, but the overall transaction (the financing of a million-plus dollar real estate development) was not made usurious by the $56 charge.
Also analogous is the much earlier case of W. & D. Flower v. O’Conner, 7 La. 198 (1834). The scant facts in the Flower opinion indicate that in an action on a $13,000 mercantile account bearing interest at 10 percent per annum, it was found that in calculating the amount due there was an “error of one hundred dollars, which was corrected.” The court said: “This does not appear to us an attempt to obtain a higher rate of interest than the law permits.” At p. 208. The bulk of the opinion is dedicated to other issues.
Each of the above “error” cases presents a one-time or singular entry, charge or calculation that was held to be of no legal consequence. No implied contract or agreement for usurious interest in violation of the statute was found in the respective circumstances in those cases, obviously because the “error” was singular and short-lived. These three cases are simply inapposite to the 23-year circumstances presented in this appeal.
We compare the more pertinent and enduring circumstances presented respectively in Paulat, Bamburg, and Blanchard. In each of these cases and for ten months or more, the debtor paid and the creditor received usurious interest on a written obligation that was not usurious on its face. In each ease an implied “agreement” or § 3501 contract for usurious interest was found because of the length of time the usurious interest was paid and received. Only in Bamburg was the creditor over paid by the debtor. The interest forfeited in Paulat and Blanchard was not sufficient to fully satisfy the principal that was owed, but all interest paid during the period of the usurious contract was forfeited and the creditor was allowed to seek recovery of the remaining principal balance at the allowable rate of interest after the forfeiture was applied.
As the original opinion correctly stated: The ultimate issue is whether plaintiffs actually collected interest at a usurious rate. The trial court said the “evidence conclusively shows” that plaintiffs “did in fact.” Indisputably, the creditor collected and the debtor knowingly paid “interest.” That interest was usurious interest from the first anniversary through the 23rd anniversary of the note. Charging and collecting the maximum allowable rate of interest on interest for that length of time is not only prohibited, it is usurious.
Notwithstanding the creditor’s assumed “good faith” in this respect [effectively saying, “I thought this method was legally permissible and did not intend to violate the law”], the cited authorities compel the conclusion that the implied “agreement” or contract for usurious interest and the applicability of the statute does not depend either on the written contract or on the intent of the debt- or and creditor to violate the law. The statute is applicable where the circumstances under which interest is paid and received after execution of the note imply a usurious agreement, a § 3501 contract.
The statute simply and clearly declares the policy that any contract for the payment of usurious interest shall result in forfeiture. The civil code and the ease law have long emphasized that the contract is not the written obligation which ostensibly “witnesses” the transaction, but is an implied contract to be inferred from the circumstances under which that obligation is implemented or consummated, in whole or in part, by the debtor and creditor over a period of time after the written obligation is executed.
If the usurious payments on a non-usurious written obligation are made and received for a sufficient period of time, the circumstances warrant the inference of an implied contract for usurious interest. Where the inference of an implied contract is *11 warranted by the circumstances, the creditor-holder of a note, not usurious on its face, and whether or not in good faith, may not avoid forfeiture under § 3501, even by reallocating or recharacterizing and properly crediting the payments to principal and allowable interest once the debtor asserts usury.
These principles apply whether the payments on the note are current or past due and whether the principal of the note has been paid in whole or in part and whether the debtor asserts usury as a sword or as a shield. Paulat, Blanchard, and Bamburg, supra.

RECALCULATION?

The original opinion correctly stated that if the creditor “collected interest at a usurious rate ... the result would require ... a forfeiture of the entire interest collected and not just the usurious portion of the interest,” citing § 3501 and Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150 (La.1973), U.S. cert, denied.
The dissents to this opinion on rehearing and the creditor’s argument on rehearing track the rationale of the court of appeal in Paulat, 345 So.2d 527 (La.App. 1st Cir.1977). That appellate court agreed with Paulat’s argument that the notes sued on were not usurious on their face; that the debtor and creditor clearly intended that the debtor would pay only what he had obligated himself to pay in the written notes; and because there was no § 3501 “contract” for usurious interest, the only penalty on Paulat was having to “reallocate the payments” correctly to principal and the legally allowable interest rate, which Paulat had done when usury was raised by the debtor before Paulat sued on the notes.
The appellate court in Paulat mentioned the “rudimentary quality” of the creditor’s accounting method and the creditor’s correct reallocation before he brought suit, implying good faith on the part of Paulat. At p. 533. The appellate court affirmed the trial court judgment awarding the creditor the reallocated principal and the legally allowable interest from the respective dates of maturity of the two notes.
In Paulat, the notes were not tainted with usury, but for a period of about 2½ years an implied usurious “contract” was found by the supreme court to have endured. Notwithstanding that the reallocation attempt was approved by the trial court and the appellate court in Paulat, the supreme court reversed, squarely holding that the creditor may not avoid the forfeiture of payments made and received as usurious interest for two or more years by recharacterizing the payments as payments on principal after the debtor asserts their usurious character. 353 So.2d at 1308. We adopt and follow that holding.
The supreme court in Paulat, found the § 3501 implied “contract,” recognizing that “[usurious] payments ... made and received by virtue of [an] agreement, express or implied, ... after maturity of the notes” violated the statute. 353 So.2d at 1310, our emphasis.
Blanchard, supra, should also be compared. There the debtor brought the action asserting usury before his note had matured and when demand had only been threatened. Blanchard’s note was not usurious on its face. The second year of Blanchard’s installment payments, the creditor informed him that the interest rate would be increased to 11 percent (a rate above the then maximum allowable rate). Blanchard only tacitly agreed to that rate, testifying that “he thought such action was within the power of the [creditor] and did not object.” 413 So.2d at 591. Our emphasis and brackets.
When Blanchard’s creditor wrote him a year later that the interest would again be increased to 12.75 percent, Blanchard then saw a lawyer who responded to the creditor that Blanchard “did not consent to [either] the 11% or [to the] 12.75% interest rate.” At p. 592. Our brackets. The trial court found no agreement to pay usurious interest. Reversing the trial court, the appellate court said that when Blanchard’s lawyer informed the bank that Blanchard disagreed with the increased interest (11 percent paid in one year and 12.75 percent demanded for the next year), that “disagreement ... terminated the prior 11% interest agreement. Therefore, the [11%] interest paid [in the second *12 year] was forfeited under [LRS 9:3501].” 413 So.2d at 592. Our emphasis and brackets. Ordering the § 3501 forfeiture, the appellate court added that the creditor, in a later action, was “not prevented from collecting the 10% interest from termination of the agreement until the note is paid in full ... and there is no legal bar to the collection of it ...” At p. 592.
In Bamburg, the debtor brought his action for forfeiture after fully paying his note. We there followed Paulat. “[P]ayments exacted after execution of a note not usurious on its face” constitute usurious interest “when such subsequent payments [occur] in fact and by [the implied] agreement of the parties ...” Paulat, at p. 1310, our brackets and emphasis.
Louisiana is not among those states which recognize the principle that “a contract not tainted with usury at its inception will not be affected by subsequent usurious payments ...” Paulat, fn. 1, p. 1310.
If the usury laws are to mean anything at all, those who engage in credit transactions regulated by laws must familiarize themselves with those laws or suffer the consequences. Otherwise there is nothing to prevent any creditor from habitually collecting excessive interest charges, as long as he purges the account of usury when it becomes necessary to go into court. Cf. Brooks v. Burgess, 228 Ark. 150, 306 S.W.2d 104, 106 (1957).
Debtors like Blanchard, and perhaps the debtor in this record, for several imaginable reasons, simply may not choose to question the creditor about the manner in which the creditor charges or computes and credits interest on a note payable in installments. See J. Fred Jones, dissenting in Bamburg, supra.
On the other hand, some debtors like Pi-rello, the debtor in Paulat, supra, willingly agree to, and do for a time, pay interest above the maximum allowable rate to an indulgent creditor.
Yet the courts in each case, with a willing debtor (Pirello) or a reluctant or tacitly agreeable debtor (Blanchard) who pays usurious interest for ten months or more, have found the LRS 9:3501 prohibition against “any contract for” usurious interest applied because the particular circumstances of each case warranted the finding of an implied contract to pay usurious interest arising after the non-usurious written note was either executed or matured. Paulat, Bamburg, Blanchard, cited supra.
Whether Williams, the debtor here, like Blanchard, was reluctant (thinking it was plaintiffs’ prerogative to charge interest in the manner employed), or, like Pirello, was willing (as Williams’s creditor suggests, “He knows that interest is charged on a mortgage note”), is of no consequence. Williams paid, agreeably or reluctantly, and the creditor collected, usurious interest for 23 years that was annually added by the creditor to the ledger balance.
Notwithstanding that Williams paid nothing in the fourth year of the note, and owed a year’s interest beginning in the fifth year, the interest added to create the balance on that anniversary was skewed and usurious. Notwithstanding that Williams thereafter resumed paying interest in the fifth year, 1970, that was less than the accumulated interest he perhaps owed, Williams paid usurious interest in the fifth year and for several years thereafter because the creditor’s method of [mis]calculating and collecting interest violated the law. This method continued through the 23rd anniversary of the note.
The fact that Williams would have paid $20,932.50 in $75 monthly installment payments for 23 years and four months had all payments been timely paid and properly credited does not negate the existence or erase the effect of a usurious contract. Neither does the fact that Williams may have owed something in true principal when usury was asserted.
While stating that § 3501 is a penal statute which must be strictly construed, the courts have consistently recognized the legislative policy set forth in the Civil Code and Ancillaries: Notwithstanding legislatively-created exceptions, no creditor shall be allowed to charge and collect, under any guise, interest from date or interest on *13 interest that is above the rate of interest allowed by law (§ 3501) ,[1]
CONCLUSION
Williams, having paid more than $18,600 over 28 years, and the creditor, having mostly charged, received and reflected, on its books, that amount annually as interest to date ($17,801), adding the annual interest charge to the carried over principal of the note on each anniversary, Williams and the creditor are legally deemed to have impliedly contracted for usurious interest from the first through the 23rd anniversary of the note.
LRS 9:3501 requires that all interest paid during the period of the usurious contract be forfeited and credited to the true principal balance owed on the $9,489 note that was sued on by the creditor.
LRS 9:3501 does not require, however, that the creditor “reimburse” or “refund” to the debtor the forfeited interest, even in part, as the trial court ordered. Art. 2924 allows one who has paid usurious interest to sue to recover the interest paid, but no suit or reconventional demand is present in this record. See Associates Financial Serv. of Amer., Inc. v. Lennix, 308 So.2d 878 (La.App. 4th Cir.1975). Usury was urged here only as an affirmative defense.
Similarly, where usury is urged and a § 3501 contract is inferred from the circumstances, recharacterization or reallocation of the payments to principal and the allowable rate of interest is not legally permissible. Paulat and authorities discussed and cited supra.
The interest paid and received ($17,801) became usurious on and after the first anniversary of the note in question. The interest that is to be forfeited then is more than sufficient to fully satisfy whatever true principal balance may be owing on Williams’s note.
DECREE
Accordingly, the judgment of the trial court is affirmed in part and reversed in part as stated above and is here recast as follows:
Finding that $17,801 usurious interest was charged, collected and added annually to principal at least from February 14, 1967, through February 14, 1989, it is ordered
—that plaintiffs’ demands are rejected at plaintiffs’ cost, here and below;
—that all interest paid the creditor-plaintiffs during that period is hereby forfeited and credited to offset the balance owed on the note sued on that was executed by the debtor, Williams, on February 14, 1966, in the amount of $9,489, and,
—that Williams’s remaining obligation on that vendor’s hen note is extinguished by the forfeiture of the interest and therefore, the custodian of the mortgage records of Madison Parish is hereby ordered to cancel from those records the inscription of the vendor’s hen and mortgage with which the note is paraphed for identification, on the authority of this judgment.
AFFIRMED IN PART, AMENDED AND RECAST.
SEXTON and VICTORY, JJ., dissent and assign written reasons.
*14 APPENDIX A
[[Image here]]
*15 [[Image here]]
*16 [[Image here]]
*17 [[Image here]]
*18 [[Image here]]
*19 [[Image here]]
*20 [[Image here]]
*21 [[Image here]]
*22 [[Image here]]
*23 [[Image here]]
*24 [[Image here]]
*25 [[Image here]]
*26 [[Image here]]

. By no device or shift the wit of man can invent, can more interest he taken ... than that which the law permits ... Baker v. Garlick, 9 Rob. 125, 128 (La.1844). Usurious contracts are not favored in any form. Cabiro v. Bradford, 13 Orl.App. 124 (La.App.1916). The court will look to the essence of the contract and not its mere outward form. Coxe v. Rowley, 12 Rob. 273 (La.1845).